UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD CARDIN,

                Plaintiff,        16-cv-6101 (JGK)

     - against -            MEMORANDUM OPINION AND ORDER

SECURITAS SECURITY SERVICES USA, INC.,

                Defendant.

JOHN G. KOELTL, District Judge:

    The plaintiff, Ronald Cardin, an African American male appearing pro se, brought this action against his employer, Securitas Security Services USA, Inc. ("Securitas"), alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") for discrimination based on race, color, and gender/sex and for a hostile work environment based on sexual harassment. The plaintiff's claims all relate to an incident that occurred in the men's restroom at his work site on August 6, 2015 (the "Restroom Incident").

    The plaintiff filed a complaint over the Restroom Incident with the New York State Division of Human Rights ("NYSDHR") on September 10, 2015. The NYSDHR found no probable cause for the unlawful practices alleged, and the U.S. Equal Employment Opportunity Commission ("EEOC"), adopting the findings of the NYSDHR, issued the plaintiff a Right to Sue letter on May 13, 2016. The plaintiff filed suit in federal court on August 1,

1

2016, naming Securitas and two of the plaintiff's supervisors as defendants. On August 9, 2016, the plaintiff amended his complaint (the "Amended Complaint") to remove his supervisors as defendants, leaving only Securitas.

Securitas now moves for summary judgment on all of the plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Securitas's motion is **granted**.

I.

The following facts are undisputed unless otherwise noted.

The plaintiff has been employed as a Security Officer by Securitas since November 2006. Statement of Undisputed Facts in Supp. of Def.'s Mot. for Summ. J. ("Statement of Facts") ¶ 1. Since 2011, the plaintiff has been stationed at the Met Life building, which is a client of Securitas. Id. ¶ 34. Securitas has a policy that prohibits Security Officers from using cell phones at work sites while on duty, including in the restroom. Id. ¶ 3. Even when off duty, Security Officers are only permitted to use cell phones at work sites in the locker room. Id.

On August 6, 2015, the plaintiff entered a men's restroom at the Met Life building before his shift began. Id. ¶¶ 2, 4-5. As the plaintiff entered the restroom, Bill McGuire, Securitas's Account Manager at Met Life and one of the plaintiff's superiors, was exiting the restroom. Id. ¶ 5. The plaintiff

entered one of the restroom's four stalls, noticing that another stall was occupied. Id. ¶¶ 4, 6-7. The plaintiff then heard a cell phone ring from the other occupied stall while McGuire was washing his hands. Id. ¶¶ 7-8. The plaintiff did not hear anybody speak. Id. ¶ 7. He then heard the restroom door close behind McGuire. Id. ¶ 9. Shortly after McGuire exited the restroom, Winston Torres, the plaintiff's supervisor, entered the restroom. Id. ¶ 11; see Am. Compl. at 3. Torres walked in front of the plaintiff's stall and looked through the crack where the door is secured. Id. Torres said, "Cardin, Bill McGuire say you on your phone. Are you on your phone?" Id. The plaintiff replied, "No, sir," which he repeated. Id. ¶ 12. Torres asked the plaintiff who was in the other occupied stall, to which the plaintiff responded that he did not know. Id. ¶ 14. The plaintiff did not tell Torres that the plaintiff had heard a cell phone ring in an adjacent stall. Once Torres exited the restroom, and the plaintiff was washing his hands, the plaintiff saw another Security Officer, Floyd Patterson, exit the stall from which the plaintiff had heard the cell phone ring. Id. ¶ 20. So concluded the Restroom Incident.

Torres later approached the plaintiff in the command center and handed the plaintiff a write-up for violating Securitas's cell phone policy. Id. ¶ 21. The plaintiff refused to sign the write-up and told Torres that he had not used his cell phone in

3

the restroom. Id. ¶ 22. The plaintiff still did not tell Torres that he had heard a cell phone ring in the adjacent occupied stall, or that he had later seen Security Officer Patterson exit that stall. Id. ¶ 23. Upon the plaintiff's request, Torres escorted the plaintiff to McGuire's office. Id. ¶ 24; Am. Compl. at 8.

In McGuire's office, the plaintiff again denied that he had used a cell phone in the restroom in violation of Securitas's policy. Id. ¶ 26. Approximately twenty minutes after the Restroom Incident, McGuire instructed Torres to tear up the write-up. Id. ¶¶ 26, 29. No other disciplinary action was taken against the plaintiff with respect to the Restroom Incident. Id. ¶ 30. However, Torres received a write-up for looking into the plaintiff's stall. Id. ¶ 31.

The plaintiff does not allege that Securitas has retaliated against him since the Restroom Incident -- he has not been demoted or transferred, nor have his hours been reduced, and his hourly compensation has increased after the incident. Id. ¶ 34. The plaintiff does not allege that Securitas has enforced its rules against him differently compared to his fellow employees, id. ¶ 36, and the plaintiff is unaware of any supervisor who has ever been critical of his job performance, Tr. of Pl.'s Dep. ("Tr.") at 63:21-25.

Finally, Securitas has a hotline, called Alertline, which employees can use to complain of suspected discrimination, harassment, or retaliation. Id. ¶ 33. The plaintiff did not use Alertline to complain about the Restroom Incident. Id. However, the plaintiff asserts in his response to the defendant's motion for summary judgment that he complained to his union about the Restroom Incident. See Declaration of Ronald Cardin (Dkt. No. 40) ("Cardin Decl.") ¶ 2.

## II.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the

5

matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Abrams v. RSUI Indemnity Co., No. 16-cv-4886 (JGK), 2017 WL 3433108, at *3 (S.D.N.Y. Aug. 10, 2017).

6

III.

A.

The defendant argues that the plaintiff cannot demonstrate that he was subject to any adverse employment action, or that any such action occurred under circumstances giving rise to an inference of discrimination based on the plaintiff's race, color, or gender/sex.[1] The plaintiff did not respond to these arguments.

At the summary judgment stage, discrimination claims brought pursuant to Title VII are governed by the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this test, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. To meet this burden, the plaintiff must establish that (1) he belongs to a protected class; (2) he was qualified for the position that he held; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances

---

[1] The defendant also argues that, to the extent the short-lived write-up amounts to an adverse employment action, the defendant has proffered a legitimate non-discriminatory explanation -- that a cell phone did actually ring and that Torres was attempting to enforce Securitas's cell phone policy in good faith -- and that the plaintiff cannot demonstrate this reason was pretextual. However, because the initial write-up did not amount to an adverse employment action, it is unnecessary to reach this issue.

7

giving rise to an interference of discriminatory intent. See id.; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

If the plaintiff can establish the elements of a prima facie case, the burden of production shifts, and the defendant must put forth a "legitimate, nondiscriminatory reason" for the employer's challenged action. McDonnell Douglas, 411 U.S. at 802; see also Feingold, 366 F.3d at 157. If the defendant satisfies this burden, then the presumption of discrimination is "rebutted and drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal quotation marks and citation omitted) (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 & n.10 (1981)). Thereafter, the plaintiff has the opportunity to demonstrate that the proffered reason was pretextual, and that the true reason was the plaintiff's membership in a protected class. Burdine, 450 U.S. at 255-56. The plaintiff must provide admissible evidence that is "sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Feingold, 366 F.3d at 152 (quoting Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)); see also Atkins v. Pitney Bowes Mgmt. Servs., No. 12-cv-5575 (JGK), 2015 WL 144158, at *4-5 (S.D.N.Y. Jan. 12, 2015).

The Second Circuit Court of Appeals has explained that "not every unpleasant matter short of [discharge or demotion] creates a cause of action" Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). Rather, to allege an adverse employment action, a plaintiff must demonstrate that the plaintiff was subjected to a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)); see also Robins v. New York City Bd. of Educ., No. 07-cv-3599 (JGK), 2010 WL 2507047, at *7 (S.D.N.Y. June 21, 2010), aff'd, 606 F. App'x 630 (2d Cir. 2015).

Construing the facts in the light most favorable to the plaintiff, the plaintiff cannot show that he was subjected to an adverse employment action. The only allegedly adverse employment action the plaintiff points to is Torres's initial write-up, which was torn up on McGuire's order approximately twenty minutes after it was delivered. The plaintiff left the meeting

9

in McGuire's office with the understanding that he was not going to be written up. Statement of Facts ¶ 28. The plaintiff admitted that he received no discipline whatsoever. Id. The plaintiff was not terminated or demoted; none of his job site, title, or his hours were altered; and his hourly compensation has increased after the Restroom Incident. Moreover, the plaintiff testified that, after the Restroom Incident, McGuire "started being all nice . . . ." Tr. at 23:7-8. The plaintiff also has not had any issue with Torres after the Restroom Incident, id. at 90:23 to 91:3, and he is unaware of any supervisor who has ever been critical of his job performance, id. at 63:21-25. The only lasting employment action arising out of the Restroom Incident was the write-up Torres received for looking into the plaintiff's stall. Thus, the short-lived write up given to the plaintiff following the Restroom Incident did not amount to an adverse employment action.

Because the plaintiff cannot point to an adverse employment action, he also cannot show that any adverse employment action occurred under circumstances giving rise to an inference of discrimination based on his race, color, or gender/sex, the fourth prong of the McDonnell Douglas test. The plaintiff does not dispute that Securitas's policy prohibits Security Officers from using cell phones in the restroom at a work site. The plaintiff also does not dispute that a cell phone rang in the

restroom after McGuire had seen him enter and while he was in one of the Restroom's four stalls. It was not unreasonable for McGuire to suspect that the plaintiff, the only other person McGuire had seen in the restroom, was in possession of the cell phone McGuire heard. And the plaintiff also did not tell Torres that he heard a cell phone ring in an adjacent stall when Torres attempted to give the plaintiff a write-up. Thus, there is nothing to indicate that the plaintiff's race, color, or gender/sex played any role in McGuire suspecting that it was the plaintiff's cell phone that rang or in Torres issuing the plaintiff a write-up, which was torn up after the plaintiff denied using his cell phone with no lasting consequences for the plaintiff.

Because the plaintiff was not subject to an adverse employment action, much less an adverse employment action giving rise to an inference of discrimination, the defendant's motion for summary judgment on the plaintiff's employment discrimination claim is **granted**.

**B.**

The defendant also moves for summary judgment on the plaintiff's claim for a hostile work environment based on sexual harassment. The defendant argues that the Restroom Incident, standing alone, is insufficient to amount to a hostile work environment, and that to the extent the Restroom Incident

11

constitutes harassment, Securitas cannot be liable because it exercised reasonable care to prevent any harassing behavior and because the plaintiff unreasonably failed to take advantage of Securitas's complaint and reporting procedures.

### (i)

In order to establish a prima facie case of hostile work environment related to sexual harassment, a plaintiff must show (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Mitchell-Miranda v. City of New York, No. 08-cv-4031 (JGK), 2011 WL 1210202, at *11 (S.D.N.Y. Mar. 24, 2011). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 227 (2d Cir. 2004)). "Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). The plaintiff must show not only that he

subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. Feingold, 366 F.3d at 150. The plaintiff must also establish that he was subject to a hostile work environment because of a protected characteristic. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); see also Atkins, 2015 WL 144158, at *8; Thelwell v. City of New York, No. 13-cv-1260 (JGK), 2015 WL 4545881, at *9-10 (S.D.N.Y. July 28, 2015)

In analyzing a hostile work environment claim, courts assess the totality of the circumstances, "considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Demoret, 451 F.3d at 149 (quoting Harris, 510 U.S. at 23).

In the Amended Complaint, the plaintiff alleged that after he and Torres left McGuire's office, Torres joked to the plaintiff's coworkers that the plaintiff has "a little penis," that Torres continued to make this joke every day, and that this was deeply humiliating to the plaintiff. Am. Compl. at 3. Such allegations could potentially move the plaintiff's claim towards the type of "sufficiently severe or pervasive" conduct that can amount to a hostile work environment.

13

However, the plaintiff directly contradicted this allegation at his deposition, where he testified under oath that he never heard Torres make any comment about his genitals and that he does not know whether Torres made any such comments behind his back. Tr. at 103:25-104:6. As the Second Circuit Court of Appeals has explained, "[t]he rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991); see Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

When the plaintiff initially failed to respond to the defendant's motion for summary judgment, the Court extended the plaintiff's time to respond, attaching copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 and explaining that "the plaintiff should respond to the defendant's motion for summary judgment and provide evidence, such as witness statements or documents, disputing the grounds for the

defendant's motion." Order dated September 5, 2017 (Dkt. No. 33) at 2. The Court further explained that "[i]t is insufficient for the plaintiff to state that he has a witness," as the plaintiff had stated. Id. The plaintiff did not produce any witness statements, documents, or other evidence to dispute the grounds for the defendant's motion. Rather, the plaintiff submitted a declaration with his opposition papers asserting that he knew of three individuals who had heard Torres make comments about the plaintiff's "private parts." Cardin Decl. ¶¶ 1, 6, 9, 10. The plaintiff's declaration directly contradicts his testimony that he did not know whether Torres had made any comments about the plaintiff's genitals to the plaintiff's coworkers. The plaintiff's declaration must therefore be disregarded. The plaintiff has therefore presented no evidence that any such comments were made.

By itself, the Restroom Incident is plainly insufficient to create a hostile work environment because it was a single, isolated incident, and no similar incidents took place before or since. Statement of Facts ¶ 38; see Demoret, 451 F.3d at 149. The plaintiff testified that nobody at Securitas ever made any comments about his race or gender that offended him, or otherwise treated him in a way that the plaintiff found to be inappropriate. Tr. 62:12 to 63:3. Aside from the fact that the Restroom Incident occurred in a men's restroom, there is nothing

15

to indicate that the incident had anything to do with the plaintiff's race, color, or gender/sex, or that it "occurred because of a protected characteristic." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

### (ii)

Securitas also argues that it is not liable for Torres's alleged harassment under the Faragher/Ellerth defense. Under this defense:

> if no tangible employment action is taken, the employer may escape liability [for the actions of a supervisor] by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013); see Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The burden is on the employer to establish both elements of the defense. Id.

In this case, no tangible employment action was taken against the plaintiff. Securitas made available to its employees a hotline, Alertline, for reporting suspected discrimination, harassment, or retaliation. Securitas took further corrective action by disciplining Torres. The plaintiff failed to take advantage of Alertline, or otherwise report the Restroom Incident to Securitas personnel. The plaintiff has not attempted

to explain why his failure to take advantage of Securitas's reporting avenues was reasonable. Securitas is therefore not liable for any harassment perpetrated by Torres. See Faragher, 524 U.S. at 807; Ferraro v. Kellwood Co, 440 F.3d 96, 102-03 (2d Cir. 2006) (Faragher/Ellerth defense available where employer had antiharassment policy and complaint procedures, which employee failed to use); Breland-Starling v. Disney Pub. Worldwide, 166 F. Supp. 2d 826, 835-36 (S.D.N.Y. 2001) (same).

Construing the facts in the light most favorable to the plaintiff, the plaintiff cannot demonstrate that the Restroom Incident amounted to a hostile work environment or that Securitas is liable for any harassment perpetrated by Torres. The defendant's motion for summary judgment on the plaintiff's claim of hostile work environment relating to sexual harassment is therefore **granted.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion is **granted**. The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:  New York, New York
        January 23, 2018

_____
John G. Koeltl
United States District Judge